IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


ARRON GRIMES #964613,
a/k/a AARON GRIMES,
    Petitioner,

vs.                                        Case No.:  1:04cv432/MMP/EMT

JAMES R. McDONOUGH,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

        Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 12).  Respondent filed a combined motion to dismiss the petition and an answer (Doc. 29).  Petitioner filed a motion to deny Respondent's motion to dismiss and a reply to the answer (Doc. 35).  This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND

        On June 11, 1997, following a jury trial, Petitioner was convicted in the Circuit Court in and for Alachua County, Florida, of two counts of robbery with a firearm (Doc. 12 at 1; Doc. 29, Ex. A at 44-45).  He was sentenced as a habitual felony offender to life imprisonment (Doc. 12 at 1; Doc. 29, Exs. B, D).  Petitioner appealed his conviction and sentence to the Florida First District Court

---

[1] James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

of Appeals (First DCA) (Doc. 29, Exs. E, F, G). The First DCA affirmed the conviction per curiam without opinion on April 14, 1999, with the mandate issuing June 15, 1999 (Doc. 29, Ex. I). Grimes v. State, 733 So. 2d 519 (Fla. 1st DCA 1997) (Table).

On August 19, 1999, Petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel (Doc. 29, Ex. K). The First DCA denied the petition per curiam without opinion on September 21, 1999 (*id*.). Grimes v. State, 743 So. 2d 512 (Fla. 1st DCA Sept. 21, 1999) (Table).

On October 24, 1999, Petitioner filed a motion for reduction or modification of sentence with the trial court (Doc. 29, Ex. L). The state court denied the motion on November 3, 1999 (*id*.).

On January 20, 2000, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, with the trial court (Doc. 29, Ex. M). The trial court denied the postconviction motion on April 14, 2000 (Doc. 29, Ex. N).

On December 28, 2001, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure, with the trial court (Doc. 29, Ex. O at 1-21). The trial court denied the motion as a successive Rule 3.850 motion on October 29, 2002 (*id*. at 24-40). Petitioner appealed the decision to the First DCA. The appellate court affirmed the decision per curiam without opinion on March 20, 2003, with the mandate issuing April 15, 2003 (Doc. 29, Ex. P). Grimes v. State, 842 So. 2d 114 (Fla. 1st DCA Mar. 20, 2003) (Table).

On October 12, 2003, Petitioner filed a second Rule 3.850 motion alleging newly discovered evidence (Doc. 29, Ex. Q at 1-13). The trial court denied the motion as untimely on May 3, 2004 (Doc. 29, Ex. R). Petitioner appealed the decision to the First DCA. The appellate court affirmed the decision per curiam without opinion on August 23, 2004, with the mandate issuing October 21, 2004 (Doc. 29, Exs. T, U). Grimes v. State, 883 So. 2d 281 (Fla. 1st DCA Aug. 23, 2004) (Table).

Petitioner filed the instant habeas action on November 22, 2004 (*see* Doc. 1 at 6). He challenges his conviction on the following grounds:

> Ground one: Ineffective assistance of counsel at the trial level during the guilt phase of the proceedings. Counsel erred by advising Petitioner not to testify and by presenting a mistaken identity defense.

>    Ground two: Police misconduct. Law enforcement officers falsely arrested Petitioner, manufactured evidence against him, and coerced witnesses.
>
>    Ground three: Newly discovered evidence (actual innocence). The victim recanted his trial testimony and alleges that he was coerced by police into embellishing his statement to police and his trial testimony.
>
>    Ground four: Trial court erred in denying Petitioner's claim of newly discovered evidence as time barred. The trial court based its calculations as to when the evidence was discovered on an erroneous formula in denying Petitioner's claim, utilizing a date allegedly attributable to Petitioner's mother's knowledge, as opposed to when Petitioner had knowledge.

(Doc. 1 at 4-5). On July 5, 2005, Petitioner filed an amended petition asserting an additional ground:

>    Ground five: Trial counsel advised Petitioner to reject plea offer and misadvised that Petitioner's maximum exposure would be 142 months.

(Doc. 12).

## II.   TIMELINESS

Respondent contends the petitions should be dismissed as untimely. Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one year period of limitation applies to the filing of habeas petitions by person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In the instant case, Petitioner asserts that the appropriate statutory trigger is section 2244(d)(1)(B) or (D) (Doc. 35 at 14-18). Petitioner argues that at least one of his claims is based upon newly discovered evidence, namely, a statement by Tellas Barnum, one of the victims, that he was induced by police to testify falsely that Petitioner robbed him with a gun (*see* Doc. 12, attached pages setting forth facts for Ground three). Petitioner states he presented this "new evidence" to the trial court in a letter dated September 10, 2001, in which he requested "mercy" in the form of immediate release or reduction of his sentence to 99 months based upon the "new evidence" (*see id.*; Doc. 29, Ex. R, attached letter to Judge Curtin from Petitioner dated September 10, 2001). Petitioner states that he became aware of the factual predicate of his claim on September 10, 2001, thus, that date is the appropriate statutory trigger (Doc. 35 at 14, 17). Alternatively, Petitioner argues that the trial court's failure to notify him that his letter would not be considered a proper Rule 3.850 motion and failure to rule on his "letter motion" created an impediment to filing his federal habeas petition, within the meaning of section 2244(d)(1)(B) (*id.* at 16, 18).

If the appropriate statutory trigger for the federal limitations period is section 2244(d)(1)(D), the date on which the factual predicate of Petitioner's claims could have been discovered through the exercise of due diligence, the instant petition is untimely. Assuming that Petitioner became aware of the factual predicate of his claims on September 10, 2001, <u>at the very latest</u>, the federal limitations period began to run on that date and expired on September 10, 2002, one year later, unless the limitations period was tolled pursuant to statutory or equitable tolling principles.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The United States Supreme Court held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000). State laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (citations omitted).

The Supreme Court recently held that time limits are filing conditions. Pace v. DiGuglielmo, 544 U.S. 408, 414, 417, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). Thus, a post-conviction application that is untimely under state law does not qualify for statutory tolling. *Id.*; *see also* Webster v. Moore, 199 F.3d 1256, 1258-59 (11th Cir. 2000). Similarly, a state petition that does not comply with a state rule requiring a written oath is not "properly filed." Hurley v. Moore, 233 F.3d 1295 (11th Cir. 2000). Although Hurley preceded Bennett, its validity was not affected by it. *See* Drew v. Dep't of Corrections, 297 F.3d 1278, 1285 (11th Cir. 2002).

The Eleventh Circuit recently considered another instance in which a motion is not properly filed -- "when a motion is filed in a court that lacks jurisdiction to hear it." Estes v. Chapman, 382 F.3d 1237, 1239 (11th Cir. 2004). The Estes court noted that Bennett had left that possibility open, albeit in dicta: "If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction . . . it will be pending, but not properly filed." Estes, 382 F.3d at 1239 (quoting Bennett, 531 U.S. at 9). The Estes court concluded that, contrary to the state's argument, the Georgia Supreme Court, where Mr. Estes' application was filed, had jurisdiction, so the limitation period was tolled. Nevertheless, it appears to be settled that if a petitioner's post-conviction filing is filed in a court that lacks subject matter jurisdiction, the limitations period would not be tolled.

On the other hand, a state court's determination that an application for post-conviction relief is subject to a state procedural bar does not render the application "improperly filed," since "[o]nly individual claims, and not the application containing those claims, can be procedurally defaulted under state law . . ." Bennett, 531 U.S. at 8. Additionally, a state post-conviction challenge that was dismissed because it was brought pursuant to the "wrong statutory vehicle" was "properly filed" within the meaning of § 2244(d)(2). Delancy v. Fla. Dep't of Corrections, 246 F.3d 1328 (11th Cir. 2001). In Delancy, the Eleventh Circuit applied Bennett in holding that Mr. Delancy had filed a post-conviction challenge to his consecutive sentences with the state trial court, pursuant to Florida Rule of Criminal Procedure 3.800, but the state court dismissed the motion on the ground that the claims raised therein should have been brought in a Rule 3.850 motion filed in the same state court. *Id.* at 1330. The Eleventh Circuit, following the reasoning of Bennett, distinguished the question "whether an application has been 'properly filed' . . . from the question whether the claims contained in the application are meritorious and free of procedural bar." *Id.* The court determined that the

district court erred in "looking beyond the face of Delancy's Rule 3.800 motion to consider the individual claims (i.e., whether they are challenges to consecutive sentences or to illegal sentences)," and concluded that the Rule 3.800 motion was "properly filed" because it, "on its face, met state procedural and filing requirements." *Id.* at 1330-31.

Finally, a state post-conviction motion that was denied as successive was "properly filed" for AEDPA tolling purposes. Weekley v. Moore, 244 F.3d 874 (11th Cir. 2001).

In the instant case, Petitioner argues that his letter to the trial court dated September 10, 2001, was a motion for relief pursuant to Rule 3.850; thus, the filing of the letter tolled the federal limitations period (Doc. 35 at 14-16).

Florida law provides that motions filed under Rule 3.850 must be in the following form:

> **(c)** **Contents of Motion.** The motion shall be under oath and include:
> (1) the judgment or sentence under attack and the court which rendered the same;
> (2) whether there was an appeal from the judgement or sentence and the disposition thereof;
> (3) whether a previous postconviction motion has been filed, and if so, how many;
> (4) if a previous motion or motions have been filed, the reason or reasons the claim or claims were not raised in the former motion or motions;
> (5) the nature of the relief sought; and
> (6) a brief statement of the facts (and other conditions) relief on in support of the motion.

Fla. R. Crim. P. 3.850(c). The state rules also require that the motion be "legibly handwritten or typewritten, signed by the defendant, and contain either the first or second oath set out at the end of [the] rule." *See* Fla. R. Crim. P. 3.987. The oath required for notarized motions contains the following language:

> Before me, the undersigned authority, this day personally appeared _____, who first being duly sworn, says that he or she is the defendant in the above-styled cause, that he or she has read the foregoing motion for postconviction relief and has personal knowledge of the facts and matters therein set forth and alleged and that each and all of these facts and matters are true and correct.

*Id.* Alternatively, the rule allows the defendant to include an unnotarized oath, which states, "Under penalties of perjury, I declare that I have read the foregoing motion and that the facts stated in it are true." *Id.*

In the instant case, the state court record conclusively establishes that Petitioner's letter to the trial court dated September 10, 2001, which Petitioner contends was a Rule 3.850 motion, did not contain an oath. Therefore, this court concludes that it did not constitute a properly filed application for post-conviction or other collateral review. *See* Hurley, 233 F.3d at 1298. Even if this court accepted Petitioner's argument that the trial court had a duty to return Petitioner's improperly filed application to him, its failure to do so does not entitle him to statutory tolling under section 2244(d)(2). *See* Sibley v. Culliver, 377 F.3d 1196, 1202 (11th Cir. 2004). Accordingly, Petitioner's September 10, 2001, letter did not toll the federal limitations period under section 2244(d)(2). Having reached this conclusion, the limitations period ran for a period of one hundred nine (109) days from September 10, 2001 to December 28, 2001, the date Petitioner filed his Rule 3.800(a) motion. The period was tolled from December 28, 2001, to April 15, 2003, during the pendency of that motion.

The limitations period was not tolled during the pendency of Petitioner's Rule 3.850 motion filed October 12, 2003, because the trial court concluded that the motion was untimely. *See* Pace, 544 U.S. at 417; *see also* Webster, 199 F.3d at 1258-59; Sykosky v. Crosby, No. 05-14341, 2006 WL 1813895, at *5 (11th Cir. June 30, 2006). Petitioner did not file any other state post-conviction motions after the Rule 3.850 filed in October of 2003. Petitioner filed his original federal habeas petition on November 22, 2004. However, on that date, 695 untolled days of the limitations period had elapsed (109 days for the period September 10, 2001 to December 28, 2001, and 586 days for the period April 16, 2003 to November 22, 2004). Thus it is clear that Petitioner's federal habeas petition was untimely unless he is entitled to equitable tolling.

Petitioner contends he is entitled to equitable tolling from September 10, 2001, the date he sent the "letter motion" to Judge Curtin, to October 21, 2004, the date the trial court denied his second Rule 3.850 motion, because the trial court failed to advise him that his letter would not be considered a "motion" and failed to rule on it (*see* Doc. 35 at 14-15). Petitioner states that the trial court previously construed a letter to the court as a post-conviction motion and ruled on it (*id*. at 15; *see* Doc. 29, Ex. L). Additionally, he states he inquired of the status of the "motion" on March 16, 2002, and received a response from the clerk of court stating that the court had not made a decision, and he would be notified by letter when a decision was made (Doc. 35 at 17, Ex. B). Petitioner

states he became aware that the court was not construing his letter as a motion in "late 2002 to early 2003," and he "immediately" filed a "proper motion" (*see* Doc. 35 at 16; Doc. 12 at 20-21). That motion was his Rule 3.850 motion filed on October 12, 2003.

"Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir.1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264-65 (11th Cir. 2004) (quoting Drew, 297 F.3d at 1286). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. *See* Wade, 379 F.3d at 1265; Drew, 297 F.3d at 1286.

The Eleventh Circuit has ruled that a petitioner is entitled to equitable tolling where the state court had assured the petitioner that it would contact him as soon as a decision was made, the court subsequently sent notice of the decision to the wrong person, and the petitioner demonstrated diligence in inquiring about the status of his case when the state court failed to contact him after fifteen (15) months from the date of filing of the case. *See* Knight v. Schofield, 292 F.3d 709, 711 (11th Cir. 2002).

Assuming arguendo that Petitioner is entitled to equitable tolling, he is entitled to tolling only from September 10, 2001 to October 12, 2003, the latest date he states he became aware of the need to file a legally sufficient Rule 3.850 motion. As discussed *supra*, Petitioner is not entitled to statutory tolling during the pendency of the October 12 motion, as the state court determined that the motion was untimely; nor has he alleged additional grounds for equitable tolling after that date. Four hundred six (406) days of untolled time elapsed from October 12, 2003, to November 22, 2004, the date Petitioner filed his federal habeas petition, thus rendering his federal petition untimely.

Petitioner's alternative contention that the State created an impediment to filing his federal petition by failing to notify him that his September 10, 2001 letter would not be considered a proper Rule 3.850 motion and failing to rule on the "letter motion" is without merit. This is not the type of state impediment envisioned in section 2244(d)(1)(B). *See* Lawrence v. Florida, 421 F.3d 1221,

Case No.: 1:04cv432/MMP/EMT

1226 (11th Cir. 2005) (habeas petitioner's assertion that the State impeded him from timely filing by providing an incompetent attorney to assist him after setting up a State registry system to monitor attorney performance was meritless, as this was not the type of State impediment envisioned in section 2244(d)(1)(B)).

Furthermore, even if the state court's failure to act on Petitioner's letter constituted an impediment to exhaustion of his claim and, thus, the filing of his federal petition, Petitioner concedes that the impediment was removed no later than October 12, 2003, upon his becoming aware of the need to file a formal Rule 3.850 motion (*see* Doc. 35 at 16; Doc. 12 at 20-21). Thus, the limitations period commenced on October 12, 2003, and expired one year later on October 12, 2004. Petitioner's federal petition filed November 22, 2004, was obviously untimely as Petitioner does not qualify for statutory or equitable tolling during the period between October 12, 2003 and November 22, 2004, as discussed *supra*. Therefore, Petitioner's federal petition is time-barred.

The only remaining issue before the court is Petitioner's claim that an exception to the time bar is required because he is actually innocent of the crimes for which he was convicted. The Eleventh Circuit held that where the federal limitations period has expired, and the petitioner is claiming actual innocence, the court must first consider whether the petitioner can show actual innocence before it addresses the issue of whether an exception to the limitation period is required by the Suspension Clause of the United States Constitution. *See* Wyzykowski v. Department of Corr., 226 F.3d 1213, 1218 (11th Cir. 2000). In Wyzykowski, the Eleventh Circuit left open the question of whether the § 2244 limitation period constituted an unconstitutional suspension of the writ because the court found the record inadequate for review of the actual innocence claim. *Id.* at 1218-19; *see also* Sibley v. Culliver, 377 F.3d 1196, 1205 (11th Cir. 2004) ("Following Wyzykowski," the Eleventh Circuit declined to reach the merits of whether the Suspension Clause requires an exception to the § 2244 limitations period because the petitioner failed to make a sufficient showing of actual innocence).

"A habeas petitioner asserting actual innocence to overcome a procedural bar must show that his conviction 'probably resulted' from a constitutional violation." Arthur v. Allen, ___ F.3d ___, No. 03-14304, 2006 WL 1687574, at *8 (11th Cir. June 21, 2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995)). The "probably resulted" standard is met

by the petitioner's demonstrating that, based on new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327, 329. "The 'reasonable doubt' standard is not to be determined on the basis of the district court's independent judgment, but should be based on the district court's 'probabilistic determination about what reasonable, properly instructed jurors would do.'" Arthur, 2006 WL 1687574, at *8 (quoting Schlup, 513 U.S. at 329). The petitioner must support his actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324. A petitioner meets the "actual innocence" threshold if the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317.

In the instant case, Petitioner's showing of actual innocence consists of an affidavit from Tellas Barnum, one of the victims of the armed robbery, which recants his trial testimony that Petitioner had a gun during the robbery (Doc. 29, Ex. R at 42-48). Additionally, Petitioner submitted three affidavits from inmates of the Florida correctional system (Doc. 29, Ex. Q). Petitioner maintains that these witnesses corroborated Barnum's recantation (*id.*). Petitioner asserts that the police induced and coerced the victims to make false statements against him and pressured them to testify at his trial (*id.*).

At Petitioner's trial, Tellas Barnum testified that Petitioner approached Quentin Arthur, Barnum's cousin, with a gun, and the other perpetrator, a "light-skinned guy," grabbed Barnum behind his neck and began choking him (Doc. 29, Ex. C at 36-37, 47). The light-skinned man started searching Barnum in an attempt to find drugs or money (*id.* at 37). When he could not find any, he pulled off Barnum's Georgetown University basketball jacket and said, "Give me your jacket. Give me your jacket." (*id.*). When the man was pulling off Barnum's jacket, Petitioner walked up and asked, "What's happening?" and then punched Barnum in the jaw (*id.*). Barnum testified that he told the police that "Arron" was one of the men (*id.* at 41). Barnum testified that the police showed him a photographic line-up, and he identified one of the perpetrators (*id.* at 41-42). Barnum testified that he "kn[e]w for a fact" that Petitioner pulled the gun and participated in the robbery of him and Mr. Arthur (*id.* at 42).

Quentin Arthur, the other victim, testified that one of the two perpetrators grabbed Mr. Barnum around the neck (*id.* at 56). The other perpetrator walked toward him (Arthur), and by the time Mr. Arthur asked the other man what he was doing to Mr. Barnum, Petitioner had pulled a gun on him (Arthur) (*id.*). Mr. Arthur described the gun as a chrome automatic with white on the bottom (*id.* at 57). Mr. Arthur identified Petitioner as the man with the gun (*id.* at 57-58). Mr. Arthur testified that Petitioner held the gun to him and took $20.00 out of his back pocket (*id.* at 58). Additionally, Petitioner snatched a Mickey Mouse necklace from around Mr. Arthur's neck (*id.*). Petitioner then told Mr. Arthur to remove his shoes, but Arthur began walking away (*id.*). Mr. Arthur turned around to see what the men were going to do to Mr. Barnum, and Petitioner said, "Get out of here before I smoke you." (*id.*). Mr. Arthur turned around and began walking slowly; he then turned back and saw the men searching Mr. Barnum's pants and pulling off his jacket (*id.* at 59). He saw Mr. Barnum being hit in the face, and then the two men got into a car (*id.*).

In his affidavit recanting his testimony, Tellas Barnum stated that on December 24, 1996, he and his cousin, Quentin Arthur, left a bar where they had been drinking and walked to the bus stop (*id.* at 45). Two males jumped out of a car and asked Barnum and Arthur if they had marijuana to sell (*id.*). Barnum and Arthur responded that they did not (*id.*). Barnum realized that one of the men was Petitioner and that he (Petitioner) was drunk (*id.*). Petitioner asked Barnum if he had any money, "so we can go half on some weed" (*id.*). Barnum responded that he had $20.00, and Petitioner said, "Let's go get some then." (*id.*). Petitioner and Barnum got into a physical altercation after Petitioner accused Barnum of soliciting the affections of his girlfriend while he was in prison (*id.* at 45-46). Petitioner punched Barnum in the face (*id.* at 46). Mr. Arthur, Barnum's cousin, removed his jacket to assist Barnum, and the man accompanying Petitioner grabbed the hood of the jacket, causing Arthur's gold chain to pop off his neck (*id.*). The two of them then began fighting (*id.*). A third party broke up the fight (*id.*). Petitioner had dropped his beeper during the fight and bent down to pick it up (*id.*). Barnum thought it was a gun (*id.*).

In his affidavit, Barnum states that he was so angry, he called the police (*id.*). He states he does not remember what he said to the police because he was so drunk (*id.*). When the police arrived, Barnum told them that Arron (Petitioner) hit him in the face, that the two of them fought, and that he wanted to press charges (*id.*). He then "finished telling the police what went on" (*id.*).

The police asked, "Arron who?" (*id.*). Barnum responded that he did not know Arron's last name (*id.*). The police asked, "Arron Grimes?" (*id.*). Barnum said, "I guess that's his name." (*id.*). The police asked if Petitioner robbed him, and Barnum said no (*id.*). The police said that was what Barnum reported when he called them, and Barnum said, "we just got into a fight, that's all" (*id.*). Barnum states that the officer kept asking him if Petitioner robbed him and what Petitioner took from him (*id.*). Barnum told them that he gave Petitioner $20.00 to get beer, and Petitioner did not give it back, but Petitioner may have forgotten since they were drunk (*id.*). The officer kept saying that Petitioner robbed him (Barnum), until Barnum finally agreed (*id.* at 46-47). Barnum states that he was so frightened and drunk that he "might have said anything" (*id.* at 47). When Barnum told the police that Petitioner dropped his beeper, an officer asked, "Wasn't it a gun?" (*id.*). Barnum told them it was a beeper (*id.*). The police transported Barnum and Arthur to the police station (*id.*). The two looked at a photographic lineup and signed the back of a photograph (*id.*). Barnum states that his cousin did not know Petitioner, but signed the photograph where Barnum signed it (*id.*).

Barnum states that he and his cousin received papers regarding going to court (*id.*). He states he wanted to "confess to this" at trial, but was afraid that he would go to jail (*id.*). Barnum states Petitioner did not rob him and did not have a gun; the two of them just got into a fight (*id.*). He states he "went along with what the police said." (*id.*).

Charles Chappel Jr., one of the inmates who corroborated Barnum's recantation, stated in his affidavit that on October 31, 1998, Tellas Barnum and he "had a few drinks" and began discussing Petitioner (Doc. 29, Ex. Q at 10). Barnum told him that Petitioner did not rob him; rather, he and Petitioner simply got into a fight (*id.*). Barnum told Chappel that he called the police to report Petitioner's hitting him in the face (*id.*). Barnum told Chappel that the reason the police charged Petitioner with robbery was because Barnum tried to run away when Petitioner hit him in the face; Petitioner grabbed Barnum by the hood of his starter jacket; Barnum wriggled out of the jacket to get away, leaving his jacket behind; and Petitioner mistakenly "popped" Barnum's gold chain (*id.*).

Arthur Hamilton, the second inmate, stated in his affidavit that in March of 2001, he and Tellas Barnum were riding together and began discussing Petitioner (*id.* at 8). Barnum told him that Petitioner punched him in the face, and they began fighting (*id.*). Barnum said that two friends

became involved in the fight, and a bystander broke up the fight (*id.* at 8-9). Barnum told Hamilton that after the fight he called the police to "press charges" against Petitioner for punching him in the face (*id.*).

Daniel Taylor, the third inmate, stated in his affidavit that Tellas Barnum told him that he wanted to "press charges" against Petitioner only for punching him in the face (*id.* at 12). Barnum also told Taylor that he did not want to testify against Petitioner, but he was afraid of "what may happen" if he did not testify (*id.*). Taylor stated that he was not sure what Barnum meant by this comment, and Barnum did not further explain it (*id.*).

The affidavits of Mr. Barnum and the three inmates are insufficient to satisfy the threshold showing under Schlup. The statements raise little doubt, if any, as to Petitioner's guilt and in no way undermine confidence in the result of his trial. Contrary to Petitioner's assertion that Barnum's affidavit reveals that police induced and coerced him to falsely accuse Petitioner, the facts relayed by Barnum do not show any misconduct on the part of the police, let alone that their conduct rose to the level of coercion or inducement. Additionally, Barnum's affidavit contradicts Mr. Arthur's trial testimony as to certain facts better known by Mr. Arthur, for example, whether it was Petitioner or the other perpetrator who grabbed Mr. Arthur's jacket and necklace, yet Petitioner has offered no credible reason to disbelieve Mr. Arthur's trial testimony. The affidavits of the three inmates offer no facts that cast doubt on Petitioner's guilt. As Petitioner has failed to make a colorable showing of actual innocence, he does not qualify for federal habeas review even if an actual innocence exception to the § 2244 limitations period exists.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby as Respondent.

And it is respectfully **RECOMMENDED** that:

1. Respondent's Motion to Dismiss (Doc. 29) be **GRANTED** and the amended petition for writ of habeas corpus (Doc. 12) be **DISMISSED**.

2. Any pending motions be **DENIED** as moot.

At Pensacola, Florida this 17th day of July 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>, **858 F.2d 698, 701 (11th Cir. 1988).**